INTERNATIONAL GRAPHITE & ELECTRODE CORP. *v.* UNITED STATES [1]

[1] C. D. 38.

## United States Customs Court, First Division

(Decided October 3, 1938)

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the petitioner.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard E. Fitz-Gibbon,* special attorney), for the respondent.

Before McClelland, Sullivan, and Brown, Judges; Brown, J., dissenting

McClelland, Presiding Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties accruing by reason of advances made by the appraiser at the port of Buffalo over the entered values of graphite electrodes imported from Canada and covered by thirty-five entries made at the subport of Niagara Falls. The percentage of advances varied up to 75 per centum over the entered value.

Section 489 of the Tariff Act of 1930, under which this petition was filed as aforesaid, provides as follows:

Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation *and supported by satisfactory evidence* under such rules as the court may prescribe that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. [Italics added.]

Thus the burden is placed upon the petitioner seeking remission to sustain the petition by "satisfactory evidence," which is the equivalent of saying that the petitioner shall establish by competent proof that entry of the involved merchandise was made "without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise."

But one witness was called to testify in support of the petition, one Roy Kenneth Brier, who stated that during the period the entries covered by the petition were made, viz, between June 14 and October 6, 1930, he was connected with the petitioning company as manager and assistant treasurer thereof, and upon being asked by counsel for the petitioner whether he made any inquiry or investigation before making entry as to the value of the graphite electrodes imported from Canada, he stated:

I called on Mr. Chace, the appraiser at Niagara Falls, and explained to him what we intended to do, and asked him how the electrodes should be imported,

and after talking to him he told me that they should be entered on the basis of the cost of production, including raw materials and labor and so forth, plus an overhead, and plus, I believe, 10% for profit.

He also stated that he explained to Mr. Chace that the electrodes were a new article of commerce and that there was no comparable commercial article in existence. After receiving the foregoing advice from Mr. Chace he communicated the substance of it to the Exolon Co. (the shipper) in Canada, and advised them to invoice the merchandise accordingly, which was "approximately 8 cents a pound, plus 10% profit, 8.8 cents a pound."

The appraiser, as above stated, did not accept the entered values, and as shown by the record an appeal to reappraisement was taken in each instance against his findings of dutiable value. It appears from the statement of the judge presiding at the hearing of the petition, who also heard the appeals to reappraisement, that he found that the merchandise should not have been entered on the basis of cost of production, and also that there was no foreign-market value for such merchandise in Canada, as found by the appraiser, nor an export value, and therefore on the record presented he reappraised the merchandise on the basis of United States value. From that finding an application for review by a division of this court was made by the Government, and after hearing argument thereon the Third Division affirmed the reappraised values with some slight changes. From the decision of the division an appeal was taken by the Government to the Court of Customs and Patent Appeals on the law in the case, and it was there decided that there was neither a foreign, export, nor United States value for the involved merchandise, and that the correct basis for appraisement was the cost of production thereof, but the cost of production, it was held, had not been proved and the appeals were therefore ordered dismissed. See *United States* v. *International Graphite & Electrode Corp.*, 25 C. C. P. A. 74, T. D. 49066.

This result left the appraised values as originally found by the appraiser, with the consequence that the additional duties accrued.

As before stated, we have only the testimony of the witness Brier in support of the petition, and it does not appear anywhere in the record that he had any first-hand knowledge of the cost of production of the merchandise, or that he or anyone else made any effort to find such cost, either before he made the entries or even subsequent thereto. As shown by the record he testified on cross-examination as follows:

X Q. You made no attempt at that time to prove the cost of production?— A. No, sir.

X Q. Isn't it a fact that at that time you didn't know what the cost of production was?

To this last question objection was made by counsel for the petitioner, which was overruled, and the witness continued:

A. No, sir; I knew what the cost of production was.

X Q. Do you remember, or are you acquainted with F. A. Bunting?

Judge Brown. You mean that you personally didn't know what the cost of production was, but the company knew?

The Witness. Yes, Your Honor; but I was familiar in a general way with the cost of production, because I was working in connection with that.

It is perfectly manifest that this witness, neither at the time he made the entry nor at the time he was testifying, was in a position to testify as to the cost of production of the involved merchandise within the meaning of that term as it is defined in section 402 (f) of the Tariff Act of 1930, and his testimony possesses no probative value in support of this petition.

Even in this proceeding there was not that frankness on the part of either the witness or his counsel that should be present in remission proceedings. This view is manifested by the fact that practically every question asked by Government counsel on cross-examination of the witness as to the market conditions in Canada for this class of merchandise at or about the dates of its shipment was objected to.

We consider the evidence thus submitted wholly unsatisfactory and therefore insufficient to warrant the granting of the petition, and it is therefore denied. See *Lowe* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590; *International Forwarding Co.* v. *United States*, 17 C. C. P. A. 86, T. D. 43377; and *Elektron Metals Corp.* v. *United States*, id. 204, T. D. 43648.

Judgment will issue accordingly.

### DISSENTING OPINION

Brown, Judge: I am constrained to dissent because, as shown by Judge Hatfield's opinion in T. D. 49066 and the opinions below in the reappraisement case Reap. Dec. 3913 and Reap. Dec. 3613 and Reap. Dec. 3676, as well as the evidence in that case (admitted in evidence here) and the peculiar facts and circumstances of the transaction, show that deciding which value applied and fixing the correct amount of dutiable value was in this case a very touchy and difficult matter which any business man was likely to get wrong and concerning which his failure to guess right was no evidence whatever of an intention to defraud and deceive. The entry seems to be an attempt to enter on cost of production. The appraisement was on a foreign-market value basis. The single judge found United States values. The division found United States values on a different basis and the court of appeals ordered the reappraisement dismissed

for failure of proof of cost of production when that practically had not been in dispute below.

The whole situation was very confusing and troublesome. The importing concern did its best to meet it on the advice of the appraiser who had approved some similar entries made on the same basis.

Everything in this confusing record points to the complete absence on the part of the importer of any intention to defraud the Government or to deceive the appraiser.

Remission of automatic penalties, in the opinion of the writer, should certainly be granted here.