BEFORE THE THIRD DIVISION, JUNE 19, 1950

**No. 54410.**—J. W. Hampton, Jr., & Company of Phila., agent for Sunola Trading Corporation *v.* United States, petition 6731-R (Philadelphia).

JOHNSON, Judge: This petition for the remission of additional duties, filed under authority of section 489 of the Tariff Act of 1930, involves the importation of soapstock from Argentina. It was entered at the port of Philadelphia on the basis of the export value of $0.0195 per pound, less freight and insurance, or at a net value of $0.0198 per pound. Appraisement was made more than 7 years after entry upon the basis of the foreign value of 162.15 pesos per 1,000 kilograms, net weight. Such increase resulted in the imposition of additional duties of $411.57, although the regular duties were only $121.05.

At the trial three witnesses testified on behalf of the petitioner and one witness on behalf of the respondent. George A. George testified he was associated at the time of importation with the Sunola Trading Corporation, the importer, now out of business, and was familiar with the transaction here involved. He made arrangements with the customhouse broker, the petitioner herein, for the entry of the goods at the purchase price paid of $0.0195 per pound. He sent the broker all the papers in his possession including the bill of lading, the consular invoice, and an extract of the invoice, but made no suggestion that the broker seek information of the appraiser or anyone else as to the market value of the merchandise, nor did he make any investigation whatsoever of the market for soapstock.

The witness further testified that he personally purchased the soapstock at the price of $0.0195, the price agreed upon between the witness and the seller, and arrangements were made to have the goods entered by the broker at the purchase price. In so making arrangements, the witness testified he had no intention of defrauding the revenue of the United States or concealing or misrepresenting the facts of the case or deceiving the appraiser as to the value. Under cross-examination the witness admitted that the filing of the entries in Philadelphia and New York was through the brokers at those ports and he had no personal knowledge or contact with the appraiser's office. His only instruction to the broker was to make the entries so that the merchandise could be promptly delivered. The witness also admitted he made no investigation of the market

(211)

value; that he just took it for granted that the purchase price was the market value; and also that he purchased the goods through a New York agent, having had no dealings with the Argentine shipper.

Witness John R. Hafer testified he was a member of the petitioner firm; that his firm represented the importer in entering the merchandise at the port of Philadelphia; that the employee who personally made the entry had died in January 1949, but that he, the witness, was familiar with the reasons why the merchandise was entered at $0.0195 per pound; that the price at which the merchandise was entered was the price given the petitioner by the importer; that it usually is the firm's practice to file a submission sheet with the appraiser; that it was not filed in this instance but the witness did not know the reason therefor; and that the petitioner just filed a *pro forma* invoice with the entry without any submission sheet or request for values.

Witness Andrew C. McQueen, appraiser at the port of Philadelphia, testified for the petitioner that he personally knows the officers of J. W. Hampton, Jr., & Company of Phila.; that he has been doing business with said officers for a great many years, has not had any difficulty with that firm, and it has always cooperated with the customs officials. The witness further testified that the filing of a submission sheet is a permissive regulation; that it is a request made of the appraiser for information as to the value, and, when submitted, all papers, documents, correspondence, orders, price lists, quotations, and other information in the possession of the importer are also sent to the appraiser; and that it is very unusual for importers not to submit a submission sheet together with all information to the appraiser.

Witness Clarence Young, customs examiner at the port of Philadelphia, testified for the Government that he was familiar with the entry covering the importation in question as the invoice was forwarded to him to make a report of appraisement and classification; that at the time of entry he had no information as to the market value in Argentina; that no submission sheet was filed, either written or verbal, by the importer at the time of entry; that he ascertained the correct value of the merchandise by requesting it from Argentina through official channels; and that the information so received, in conjunction with information supplied by the New York appraiser, resulted in the final appraised value.

The witness further testified that he requested a foreign investigation in the year 1941 to determine the export value; that it took 3 or 4 years to obtain the information but just prior to finally clearing up the foreign investigations, the Commissioner of Customs requested that appraisement upon all shipments from Argentina be withheld until the question of conversion of Argentine currency was cleared up and, for that reason, it was not until 1948 that permission was given to go ahead with the appraisement.

A copy of a report from a customs agent at the port of New York, admitted in evidence as exhibit 1, disclosed that the shipment in question in this case included a total of 236 barrels of soapstock, 142 barrels of which were entered at the port of New York and the remaining 94 barrels at the port of Philadelphia; that the customhouse broker handling the shipment at the port of New York presented a submission sheet to the New York appraiser in connection with the 142 barrels, at which time advice was given to amend the entry at that port and that the amendment was filed raising the price from $0.0195 to $0.0235 per pound.

Counsel for the petitioner contends that as it was established at the trial that the merchandise was entered at the price actually paid for same, and at the time of entry no other prices were known, which would lead to the belief that the entered price was not the proper dutiable value, judgment should be entered for the petitioner, particularly in view of section 489 of the Tariff Act of 1930 being a remedial statute, which should be liberally construed, and the delay of the Government in making the appraisement.

Counsel for the Government contends that the petitioner has not met the burden of proof required by section 489, in that the purchaser of the merchandise failed to instruct the broker as to the entered value, and the broker merely entered the goods at the value shown on the *pro forma* invoice without filing a submission sheet with the Government, nor making any effort to ascertain the proper value of the goods.

In the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, the appellate court announced that the fundamental facts which the petitioner must establish if he is entitled to relief from the imposition of additional duties under the provisions of section 489 are:

* * * First, He must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In the case of *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590, the circumstances surrounding the entry of the merchandise were somewhat similar to the entry herein, in that the headquarters of the importing company were in New York while the goods ordered were imported at the port of Baltimore. The broker had entered the goods as invoiced, but even though the New York headquarters had notified the Baltimore branch that the invoice prices were too low, and attempts were made to amend the entry, the court denied the petition. The court found that the particular merchandise in question had never been purchased by the Baltimore branch of the firm and nothing was known of the value. Nevertheless, the invoice was delivered to the customs broker with no instructions other than to direct the broker to clear the goods. The customs broker likewise knew nothing of the value of the goods and failed to attempt to inform himself. In denying the petition, the appellate court cited and followed the rule announced in numerous cases as follows:

We have definitely held that where an importer has no knowledge of the value of goods imported he is put upon inquiry as to the value of such goods and that if he fails to make such inquiry and enters his importation at so low a value as to result in the imposition of additional duties, he can not be relieved therefrom by taking the proceedings provided for in section 489. * * *

In the case of *R. W. Gresham* v. *United States*, 27 C. C. P. A. 106, C. A. D. 70, the court, in construing section 489, stated that Congress did not intend to suggest that there was a changed attitude toward the wholesome effect of the additional-duty provision in protecting the revenue, nor did it intend to provide an easy means for the circumvention of the statute. The court was of the opinion that one who enters merchandise owes a duty to inform himself as to the correctness of his representations as to the value, and a showing of indifference to the proper value does not meet the requirements of satisfactory proof under the statute. The court was also of the opinion that the mere statement on the part of the witnesses that they did not intend to defraud, while competent evidence, is insufficient unless supported by other satisfactory evidence.

In the case of *National Silk Spinning Co., Inc.* v. *United States*, 28 C. C. P. A. 24, C. A. D. 119, the merchandise at issue was appraised as invoiced and entered. The collector appealed for a reappraisement, the result of which was an advance of 8 per centum over the entered value. No appeal was taken by the importer and the collector assessed the additional duty. In denying the petition for remission of the additional duties, the court stated:

In view of the fact that the importation was the first of its kind made by appellant, which was the only silk mill operator that tried to use it, appellant

certainly could not, by reason of its own experience, have possessed knowledge of the true value of the merchandise. The record does not disclose that anyone representing appellant at any time made any effort to ascertain whether the entered value was equal to the proper dutiable value; it is utterly barren of proof of anything even approaching satisfactory evidence in support of the petition, and reflects nothing but indifference as to the proper value of the merchandise. It therefore does not meet the requirements of satisfactory proof under the statute. Under the circumstances there was a duty upon the appellant to seek information as to the correctness of its representations as to the value of its merchandise. This duty was not performed.

The record before us clearly fails to establish that any effort was made on behalf of either the importer or the broker to seek information as to the correctness of the entered value. The broker certainly was put upon inquiry at least of ascertaining the value at which the larger portion of the shipment was entered at the port of New York. Moreover, the evidence fails to disclose that the broker had any knowledge of the value of the goods. The delay in the appraisement is not a circumstance which may be stressed in order to condone the petitioner's undervaluation of the merchandise.

In view of the authorities heretofore cited, it is clear that the petitioner has not submitted satisfactory evidence to establish that entry at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

Judgment will therefore be issued in favor of the respondent, denying the petition.