# UNITED STATES v. FISH.

CERTORARI TO THE COURT OF CUSTOMS APPEALS.

No. 653. Argued April 23, 1925.—Decided June 1, 1925.

1. Under Jud. Code §§ 195, 198, the Court of Customs Appeals has jurisdiction to review a decision of a board of general appraisers denying a petition, filed under § 489 of the Tariff Act of Sept. 21, 1922, praying remission of additional duties assessed under that section based on excess of final appraised value over entered value of articles imported. P. 610.

2. Such a decision of the board of general appraisers is a final decision within Jud. Code § 195, since it follows final appraisement, and its finality is not dependent on subsequent liquidation by the Collector. P. 611.

3. Upon petition for remission of additional duties under § 489 of the Tariff Act, *supra,* the issue to be decided by the board of general appraisers is whether the importer has shown by his evidence that the entry at less value than finally appraised was without intent to defraud the revenue, conceal or misrepresent the facts or deceive the appraiser; and a finding merely that the importer was careless will not justify the board in deciding whether there should be a remission. P. 612.

12 Cust. App. 307, affirmed.

CERTIORARI to a decision of the Court of Customs Appeals reversing a decision of the Board of General Appraisers (T. D. 40,315) and remanding the case for a new trial.

*Mr. Assistant Attorney General Hoppin,* with whom the *Solicitor General* and *Mr. Samuel M. Richardson,* Attorney in the Department of Justice, were on the brief, for the United States.

*Mr. Allan R. Brown* for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This case is brought here by certiorari after a certificate of importance by the Attorney General, in accord with

§ 195 of the Judicial Code, as amended by the Act of Congress approved August 22, 1914, c. 267, 38 Stat. 703. The case in the Court of Customs Appeals was an appeal from a decision of the Board of General Appraisers denying two petitions filed under § 489 of the Tariff Act of September 21, 1922, c. 356, 42 Stat. 858, 962. The parts of § 489 which are relevant here are inserted in the margin.*

The importer purchased at Hong Kong plaited peacock flues:

50 pounds at $26.00 per pound, July 9, 1922.
48 pounds at $28.00 per pound, July 27, 1922.

---

* Sec. 489. Additional Duties. If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed on any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. . . . Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. . . . .

50 pounds at $28.00 per pound, Aug. 20, 1922.
36 pounds at $28.00 per pound, Aug. 30, 1922.
27 pounds at $32.00 per pound, Aug. 30, 1922.

The importations were entered at the custom house by the importer's broker and the entered value stated in the entries was the invoice price paid for each lot of flues. All the goods were appraised at $32.00 per pound. Under paragraph 1419 of the Tariff Act of 1922 (42 Stat. 915) the duty on the peacock flues was 60 per cent. ad valorem. The appraised value of $32.00 a pound exceeded the entered value of $28 a pound by 14 per cent. It exceeded the entered value of $26 a pound by 23 per cent. This increased the duty on the first 50 pounds from $960 to $1,328, and on the remaining undervalued 134 pounds $2,572 to $3,173, or a total on all entries of additional duties of $968. This illustrates the importance of the conclusion of the Board as to the intent of the importer in undervaluation under § 489. In due time after the appraisement the importer filed petitions to avoid the imposition of the additional duties. At the hearing before the Board the only witness was the importer, who testified that when he bought he got quotations by cable, that the market changed rapidly, sometimes as much as 50 per cent., that he had been importing for two years and that this was the first instance in which there had been an advance in value by the appraiser; that he gave the broker the invoice and told him to make the entry, and that in so doing he did not intend to deceive the appraiser. This was all the evidence. The Board of General Appraisers denied the petition, on the ground that the broker who made the entry should have testified, and suggested that the most favorable view as to the importer's conduct was that he was very careless. The importer appealed. The Government moved to dismiss the appeal, on the ground that there was no right to appeal. The court denied the

motion to dismiss, holding that it had jurisdiction. On the merits, the court found that the Board of General Appraisers erred in not finding whether there was or was not fraud or intent to deceive by the importer or his broker, and remanded the case for a new trial on that issue.

The relevant parts of § 195, as amended, 38 Stat. 703, and of § 198, of the Judicial Code, adopted March 3, 1911, are as follows:

"Sec. 195. The Court of Customs Appeals established by this chapter shall exercise exclusive appellate jurisdiction to review by appeal, as herein provided, final decisions by a board of general appraisers in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classifications and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said board, and all appealable questions as to the laws and regulations governing the collection of the customs revenues. . . .

"Sec. 198. If the importer, owner, consignee, or agent of any imported merchandise, or the collector or Secretary of the Treasury, shall be dissatisfied with the decision of the Board of General Appraisers as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, or with any other appealable decision of said board, they, or either of them, may, within sixty days next after the entry of such decree or judgment, and not afterwards, apply to the Court of Customs Appeals for a review of the questions of law and fact involved in such decision. . . ."

The Government insists that the action of the Board of General Appraisers under § 489 of the Tariff Act of 1922, does not involve such an exercise of judicial judgment as to be regarded as appealable under the general jurisdiction of the Court of Customs Appeals. The sug-

gestion is that as the evidence to be submitted on the point at issue is to be under rules to be approved by the Board, it is a matter confined to their action; that their discretionary power is to be exercised very much as the discretion is to be exercised by the Secretary of the Treasury on clerical errors under § 489, or as exercised by him on a question of intent of the importer in the Act of October 3, 1913, c. 16, § III, I, 38 Stat. 114, 184.

The Court of Customs Appeals reached the conclusion that the decision of the Board on the law and facts might affect the duty imposed on the imported articles so materially that Congress must have intended to give the importer the right to avail himself of the provision for appeal to the Court of Customs Appeals. We agree with that conclusion. We think that this is a decision of the law and the facts respecting the rate of duty imposed on classified merchandise imported, or at least that it concerns the fees and charges connected therewith. We think that it is a question relating to the laws and regulations governing the collection of customs revenues of importance, and is appealable. It comes, therefore, under the several heads of the jurisdiction of the Court of Customs Appeals, as defined in §§ 195 and 198. We think that the interpretation of the expression "appealable questions" as only including questions which are elsewhere referred to as appealable, is too narrow a view of the purpose of the statute. It would be unreasonable to suppose that a Court of Appeals, given the power to reexamine both the law and the facts on all the important issues raised in respect to duties, was excluded from reviewing the issue of retaining or remitting a considerable percentage of those duties. This view is sustained by *Brown & Co. v. United States,* 12 Ct. Cust. Appls. 93, although the point there involved was only one of jurisdiction of the Board.

But it is said that this decision of the Board of Appeals is not a final decision, and that only final decisions are

subject to review by the Court of Customs Appeals.  Section 195 refers to final decisions, § 198 to decisions.  But even if the language of § 195 is to prevail, we think that under § 489 the decision of the Board of General Appraisers as to increase or decrease of duties is final, so far as the Board is concerned.  Such a decision under § 489 can not take place until there is a final appraisement, because until that time there is no opportunity to determine whether the 1 per centum clause applies.  But it is said that the decision is not really final until after the liquidation by the Collector, and that liquidation in this case has not taken place.  We do not think that the liquidation by the Collector of the duties in such cases constitutes the final decision subject to appeal.  Section 489 itself shows that the final decision of the Board on this point may be before or after liquidation.  This is not a case analogous to the final judgments in the ordinary practice of appellate courts in respect to which it is held that cases appealed may not be taken up piecemeal.  As the Board may make a final decision on the point, we do not see why the Court of Customs Appeals has not jurisdiction at once to consider the ruling of the Board and thus facilitate the ultimate liquidation of the duties if it has not already been completed.

Upon the merits of the case, we think the Court of Customs Appeals was right and that the finding of the Board of General Appraisers did not respond to the requirement of the statute.  The issue to be found by the Board was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.  The issue presented to the Board was, " Has the importer sustained the negative in this regard?"  Merely to find that

the importer was careless is not a finding sufficient to justify the Board in deciding whether there should be a remission. Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent.

The judgment of the Court of Customs Appeals is

*Affirmed.*